IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| RICHARD HENRY HECTOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:09-00397 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered May 4, 2010 (Document No. 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Richard Henry Hector, (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 23, 2005 (protective filing date), alleging disability as of December 1, 2003, due to a bipolar disorder, manic depressive disorder, hearing loss, high blood pressure, and seizures.[1] (Tr. at 17, 58, 81-83.) The claims were denied initially and upon reconsideration. (Tr. at 58-60, 64-66.) On June 15, 2006, Claimant requested a hearing before an Administrative Law Judge

---

[1] Upon his request for reconsideration, Claimant alleged the additional disabling impairments of asthma and back and right hip pain. (Tr. at 64.)

(ALJ). (Tr. at 17, 69-71.) The hearing was held on June 27, 2007, before the Honorable Charlie Paul Andrus. (Tr. at 38-55.) By decision dated January 2, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-26.) The ALJ's decision became the final decision of the Commissioner on February 17, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 7-9.) Claimant filed the present action seeking judicial review of the administrative decision on April 21, 2009, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace),

>we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, December 1, 2003. (Tr. at 19, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from back and leg pain, seizures, anxiety, depression, and a history of alcohol abuse in remission, which were severe impairments. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional level but with the following nonexertional limitations: he can carry out less than complex, routine instructions in a low social interaction demand setting and is moderately limited in ability to make changes in the work setting. He should not perform work at heights or around open dangerous machinery; climb ladders and only occasionally balance; and no work in cold temperatures or subject the body to vibration.

(Tr. at 21, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a heavy level material handler, medium level assembler and inspector, light level marker/labeler and grader/sorter, and sedentary level handpacker and assembler. (Tr. at 25-26, Finding No. 10.) On this

basis, benefits were denied. (Tr. at 26, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 3, 1964, and was 42 years old at the time of the administrative hearing, June 27, 2007. (Tr. at 25, 41, 81.) Claimant had a high school education and two years of college level work, and was able to communicate in English. (Tr. at 25, 42.) In the past, he worked as a tile setter and maintenance worker. (Tr. at 25, 50, 86-88.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to set forth all of Claimant's limitations in the hypothetical question to the VE. (Document No. 11 at 9-13.) Claimant further alleges that in assessing Claimant's RFC, which he had to formulate to pose a proper hypothetical to the VE, the ALJ erred by failing to acknowledge that Claimant had experienced episodes of decompensation or deterioration of extended duration. (Id. at 10-12.) The Commissioner responds that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 12 at 11-15.)

Analysis.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The medical evidence of record reveals that on December 13, 2004, Claimant was admitted

to the psychiatric unit of King's Daughters' Medical Center. (Tr. at 177-79.) Mental status exam revealed slight psychomotor retardation, constricted affect, and sad mood. (Tr. at 178.) Claimant reported having experienced auditory hallucinations at times, which he said dated to childhood. (Id.) He admitted paranoid feelings about people, that he did not like to hang out with anyone, and that he preferred to stay to himself especially when he ate. (Id.) Claimant was oriented, exhibited average intelligence, had normal memory, and had fair insight and judgment. (Id.) Diagnoses included bipolar disorder, most recent episode depressed, recurrent, severe, with psychotic features; panic disorder with agoraphobia; alcohol dependence; and a GAF of 35. (Id.)

Claimant was admitted again to King's Daughters' Medical Center on April 12, 2005 , when he presented with depression and some suicidal ideation in the context of alcohol intoxication. (Tr. at 140-42.) On mental status exam, Claimant was somewhat sedated, but alert. (Tr. at 141.) Eye contact was fair and he presented with a euthymic mood and somewhat blunted and constricted affect. (Id.) Intelligence was average and his judgment and insight were fair.(Id.) He was diagnosed with bipolar disorder by history, depressed without psychotic features; panic disorder by history; and a GAF of 38. (Tr. at 142.) He was started on psychotropic medications. (Id.)

On June 24, 2005, Claimant began six days of treatment at Prestera Mental Health Center for "grief issues related to death of [four] friends in past [two] years." (Tr. at 460-61.) Symptoms that contributed to his admission included depression and mania, suicidal thoughts, and auditory and visual hallucinations. (Tr. at 461.) Claimant responded well to treatment and reported a stable mood on discharge, with no auditory or visual hallucinations or suicidal ideations. (Tr. at 460.) On discharge, he was assessed with a GAF of 60. (Id.) On July 1, 2005, however, Claimant was admitted to River Park Hospital due to suicidal ideation with plan of overdose and shooting himself, alcohol dependence issues, depression, and auditory hallucinations. (Tr. at 258-65.) Claimant remained hospitalized for 27 days, where he received therapy and medication treatment. (Id.) Claimant was

discharged on July 28, 2005, with diagnoses of alcohol dependence, bipolar disorder NOS, personality disorder NOS, and a GAF of 70. (Tr. at 262.)

On December 8, 2005, Claimant was examined by Penny Perdue, M.A., a psychologist. (Tr. at 271-74.) Claimant was cooperative during mental status exam, and presented with adequate eye contact, relevant and coherent speech, a depressed and anxious mood, a restricted affect, fair insight and judgment, normal memory, and mildly deficient concentration. (Tr. at 272-73.) Ms. Perdue diagnosed bipolar I disorder, most recent episode depressed, severe with psychotic features; generalized anxiety disorder; posttraumatic stress disorder; and alcohol dependence, early full remission. (Tr. at 273.)

On December 28, 2005, Joseph Kuzniar, a state agency reviewing medical source, completed a form Psychiatric Review Technique. (Tr. at 275-88.) Mr. Kuzniar opined that Claimant's bipolar syndrome, generalized anxiety disorder, and posttraumatic stress disorder resulted in only mild limitations of activities of daily living and maintaining social functioning, concentration, persistence, and pace; and one or two episodes of decompensation, each of extended duration. (Tr. at 175, 285.) Mr. Kuzniar also completed a form Mental Residual Functional Capacity Assessment on which he opined that Claimant was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pact without an unreasonable number and length of rest periods. (Tr. at 289-91.) Mr. Kuzniar opined that Claimant's RFC ratings indicated that he retained "the capacity to carry out less than complex routine instructions within a low social interaction demand work setting." (Tr. at 291.)

Ms. Perdue again examined Claimant on April 26, 2006. (Tr. at 307-11.) On mental status exam, Ms. Perdue noted that Claimant's immediate and remote memory was within normal limits and that his recent memory was moderately deficient. (Tr. at 307-08.) His insight, judgment, and concentration were within normal limits and his social functioning and pace were mildly deficient. (*Id.*) Ms. Perdue diagnosed panic disorder without agoraphobia, bipolar disorder NOS, psychotic disorder NOS, and alcohol dependence in early full remission. (Tr. at 309.)

On May 4, 2006, Dr. Jeff Harlow, Ph.D., a licensed psychologist, completed a form Psychiatric Review Technique. (Tr. at 312-25.) Dr. Harlow opined that Claimant's bipolar disorder, anxiety, and substance abuse disorder resulted in mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning, concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration. (Tr. at 322.) Dr. Harlow opined that Claimant could "perform repetitive work-related activities because these limitations are moderately limited or less." (Tr. at 324.)

Dr. Harlow also completed a form Mental Residual Functional Capacity Assessment on which he opined that Claimant was moderately limited his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 326-27.) Dr. Harlow concluded that Claimant could "perform repetitive one and two step work-like activities on a sustained basis." (Tr. at 328.)

As discussed above, the ALJ determined that Claimant retained the mental RFC to carry out less than complex, routine instructions in a low social interaction demand setting, and that he was moderately limited in his ability to make changes in the work setting. (Tr. at 21.) The ALJ's RFC assessment is consistent with the RFC assessments of the two state agency medical consultants, Dr. Harlow and Mr. Kuzniar. Likewise, his mental RFC assessment is consistent with the reports from Ms. Perdue. As discussed above, the record reflects diagnoses of severe mental impairments from Ms. Perdue, but she did not identify any limitations resulting from those impairments beyond those limitations assessed by the ALJ. Furthermore, Ms. Perdue opined that Claimant's memory was within normal limits, as were his social functioning, persistence, and pace. Ms. Perdue only indicated that his concentration was mildly deficient, which again, was consistent with the ALJ's assessment. The ALJ concluded that Claimant's mental impairments resulted in mild limitations in activities of daily living and moderate limitations in maintaining social functioning, concentration, persistence, or pace. Thus, the ALJ's assessment is consistent with the medical evidence of record.

Claimant alleges that the ALJ erred in stating that the state agency consultants "determined the claimant has never experienced an episode of deterioration or decompensation in work or work-like settings." (Document No. 11 at 10-11.) The undersigned finds that the ALJ misstated the findings of the state agency medical consultants, who did note that Claimant experienced one or two episodes of deterioration or decompensation. Nevertheless, the undersigned finds that any such error is harmless. Though the state agency medical consultants concluded that Claimant experienced one or two episodes of deterioration or decompensation, they each ultimately found that Claimant was capable of working and did not identify any limitations resulting from the decompensation itself. Furthermore, Claimant has failed to identify any such limitations. The ALJ essentially adopted the opinions of the state agency medical consultants. Accordingly, the undersigned finds that the ALJ's mental RFC assessment is supported by substantial evidence and that Claimant's arguments in these

respects are without merit.

As a corollary, Claimant also alleges that the ALJ erred in posing a hypothetical question to the ALJ because he failed to incorporate all of Claimant's limitations. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 51-53.) The ALJ included all the limitations as he assessed in Claimant's mental RFC, and therefore, the undersigned finds that the ALJ's hypothetical question is supported by substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**,

and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: September 7, 2010.

R. Clarke VanDervort
United States Magistrate Judge